IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| HENRY BRIGGS, | § | |
| Plaintiff, | § | |
| vs. | § | No. 04-2648-B/P |
| U.S. MARSHALS SERVICE, et al., | § | |
| Defendants. | § | |

ORDER GRANTING DEFENDANT MILLS'
MOTION FOR SUMMARY JUDGMENT
ORDER OF DISMISSAL
ORDER DENYING MOTION TO COMPEL DISCOVERY
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

On August 18, 2004, Plaintiff Henry Briggs, Bureau of Prisons ("BOP") inmate registration number 19392-076, who was, at the time he commenced this action, a pretrial detainee at the West Tennessee Detention Facility ("WTDF") in Mason, Tennessee, filed a complaint pursuant to Bivens v. Six Unknown Fed. Agents, 403 U.S. 388 (1971). The Court issued an order on April 19, 2007 that, inter alia, dismissed the complaint as to the U.S. Marshals Service, the Corrections Corporation of America ("CCA"), and the "WTDF Medical Staff," and directed the Clerk to issue process for, and the marshal to effect service on, the remaining defendant, WTDF Warden Marcel Mills. (D.E. 5.) Mills filed an answer to the complaint on June 4, 2007 (D.E. 9) and, on July 30, 2007, a motion for summary judgment,

accompanied by a legal memorandum, a statement of undisputed facts, and the affidavit of Marcel Mills, sworn to on July 19, 2007. (D.E. 12.)[1] Because Plaintiff did not file a timely response to the motion, the Court issued an order on October 5, 2007 directing him to show cause, within eleven (11) days, why the action should not be dismissed, pursuant to Fed. R. Civ. P. 41(b), for failure to prosecute. (D.E. 16.) Briggs' response to the show cause order, which was dated October 12, 2007, was docketed on October 19, 2007. (D.E. 17.)[2] In that document, Plaintiff did not respond to the motion for summary judgment but, rather, reiterated that he was entitled to relief and stated that "the denial of the defendant along with the joining parties should be judged by the Court." (Id. at 1.) Finally, on October 19, 2007, Mills filed a motion, pursuant to Fed. R. Civ. P. 37(a), seeking issuance of an order compelling discovery. (D.E. 18.)

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of

---

[1] Although the docket describes the motion as seeking judgment as a matter of law, the motion is entitled a motion for summary judgment.

[2] As Plaintiff has responded to the order to show cause, it is necessary to address the merits of the summary judgment motion. Pursuant to Local Rule 7.2(a)(2), "[f]ailure to respond timely to any motion, other than one requesting dismissal of a claim or action, may be deemed good cause for granting the motion."

2

an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (same).[3]

---

[3] Rule 56(e) sets forth in detail the evidentiary requirements applicable to a summary judgment motion:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to all the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

Fed. R. Civ. P. 56(f) provides as follows:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

"Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a

4

filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000); see also Good v. Ohio Edison Co., 149 F.3d 413, 422 (6th Cir. 1998); Plott v. General Motors Corp., 71 F.3d 1190, 1196-97 (6th Cir. 1995). The Sixth Circuit has held that, unless the nonmoving party files a Rule 56(f) affidavit, a district court cannot decline to consider the merits of a summary judgment motion on the ground that it is premature. Wallin v. Norman, 317 F.3d 558, 564 (6th Cir. 2003). In this case, Briggs did not file a Rule 56(f) affidavit, and he has made no argument that he requires discovery in order to respond to the pending motion.

The facts relevant to this motion are as follows:[4]

1. Marcel Mills is the warden of the WTDF. (Mills Aff. (D.E. 12-3), ¶ 2.)

2. The WTDF is a detention facility operated by Corrections Corporation of America ("CCA"), and is located in Mason, Tipton County, Tennessee. Federal pretrial detainees in the custody of the United States Marshals Service ("USMS") are housed at WTDF. (Id., ¶ 3.)

3. USMS protocol requires that WTDF receive approval from the USMS before any pretrial detainee is removed from the confines of the WTDF, for any reason. This requirement applies whenever a federal

---

[4] The Court's task in evaluating this summary judgment motion is complicated by the fact that this pro se plaintiff has not complied with Local Rule 7.2(d)(3), which provides, in pertinent part, that "the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied . . . shall respond to the proponent's numbered designations, using the corresponding serial numbering." The Court has attempted to discern, from Plaintiff's verified complaint, the extent to which he disagrees with Defendant Mills' proposed factual findings. In that regard, Plaintiff's verified complaint is the functional equivalent of an affidavit. Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001); Weberg v. Franks, 229 F.3d 514, 526 n.14 (6th Cir. 2000).

5

4. On July 14, 2004, Plaintiff Henry Briggs was a federal pretrial detainee in the custody of the USMS housed at WTDF. Inmate Briggs states that he injured his ankle on that date while playing softball. (Compl. (D.E. 1 at 3).)

5. On July 14, 2004, Plaintiff was examined by the WTDF medical staff after complaining of pain in his ankle. (Mills Aff. (D.E. 12-3), ¶ 7.)[5]

6. After examining Plaintiff, the medical staff noted that his ankle was swollen, and ordered crutches, an ace bandage wrap for support, an ice pack for swelling, and ibuprofen for pain. An x-ray of Plaintiff's left ankle was also ordered. (Mills Aff. (D.E. 12-3), ¶ 8.)[6]

7. An x-ray of Plaintiff's left ankle was performed on July 16, 2004, and the examining radiologist found that Plaintiff had suffered an oblique fracture of the distal fibula. (Mills Aff., ¶ 9.)

8. On July 19, 2004, Dr. Frederick Cole, a physician providing medical services to inmates at WTDF, ordered that Plaintiff be examined by an orthopedic specialist. (Id., ¶ 10.)

9. Following USMS protocol, Dr. Cole submitted a request to the USMS seeking approval for Plaintiff to be examined by an off-site specialist. The request was submitted on July 19, 2004 and approved by the USMS on that same date. (Id., ¶ 11.)

pretrial detainee is removed from WTDF to receive medical treatment or services from off-site healthcare providers. USMS protocol also requires that WTDF medical staff receive approval from the USMS before a federal pretrial detainee receives any non-routine and non-emergency medical care, such as surgery. (Id., ¶ 4.)

---

[5] The complaint is not inconsistent. Plaintiff alleges that "I injuried [sic] my ankle in a softball tournament on 07-14-04 at 10:05 AM which was x-rayed and confirmed broken 2 days later on "07-16-04: by an outside nurse." (Compl. (D.E. 1 at 3).)

[6] In his complaint, Plaintiff asserts that, immediately after his injury, "I didn't receive any emergency assistance period." (Compl. (D.E. 1 at 3).) As Plaintiff filed no response to the summary judgment motion, it is not clear whether he contends that he did not, in fact, receive the assistance specified in the text or whether he contends that that assistance was inadequate.

10. On July 21, 2004, the orthopedic specialist ordered that Plaintiff undergo surgery to repair the fracture in his ankle. On that same date, Dr. Cole requested from the USMS approval for Plaintiff to have the surgery performed. On July 22, 2004, the USMS approved Plaintiff's surgery. (Id., ¶ 12.)

11. Plaintiff's surgery was performed on August 4, 2004 at Baptist Memorial Hospital in Tipton County. Plaintiff was discharged and returned to WTDF on August 5, 2004. (Id., ¶ 13.)

12. After being discharged from the hospital and returned to WTDF, Plaintiff's medication was brought to him and he was provided an extra mattress to use during his recuperation. Briggs was seen by the orthopedic specialist for a follow-up appointments on August 11, 2004 and September 8, 2004. He was also prescribed, and received, physical therapy treatment at an off-site healthcare provider, The East Memphis Orthopedic Group. Plaintiff was returned to the hospital to have the pins that were inserted in his leg surgically removed on October 8, 2004. He was also seen again by the orthopedic specialist who performed his surgery for another follow-up visit on or around October 20, 2004. (Id., ¶ 14.)

13. All medical treatment decisions are left to the medical staff at WTDF, and not to the Warden. (Id., ¶ 16.)

14. At no time did Mills render any medical treatment to Plaintiff, nor did the Defendant refuse or interfere with any medical attention being given to Plaintiff. At no time did Mills ever instruct or inform any person or medical provider to refuse, withhold, or delay treatment to Plaintiff. (Id., ¶ 17.)[7]

---

[7] The allegations in the complaint do not appear to contradict this proposed factual finding. In the complaint, Briggs relates two conversations with Mills, one on or about July 28, 2004 and the second on or about August 3, 2004, concerning the scheduling of the surgery. In the July 28, 2004 conversation, the Defendant allegedly told Plaintiff that the USMS was responsible for scheduling his surgery. In the August 3, 2004 surgery, Mills allegedly told Plaintiff his surgery had been scheduled but that his surgery had been delayed because the USMS did not want to pay his medical expenses. (Compl. (D.E. 1 at 4).) In his affidavit, Mills states that he does not recall the alleged conversations. (Mills Aff. (D.E. 12-3), ¶ 15.) It is not necessary to resolve this factual dispute, and Mills is entitled to summary judgment, for the reasons stated in the text, regardless of whether or not he made the statements attributed to him in the
(continued...)

7

15. At no time did Mills participate in any decision making processes concerning Plaintiff's course of medical treatment. (Mills Aff. (D.E. 12-3), ¶ 18.)

16. At no time did the Defendant communicate with the USMS regarding Plaintiff's medical treatment. (Id., ¶ 19.)

17. Mills was not consulted by the WTDF medical staff or by any off-site healthcare providers concerning Plaintiff's medical treatment. (Id., ¶ 20.)

18. Mills had absolutely no personal involvement in Briggs' medical treatment. (Id., ¶ 21.)

In his summary judgment motion, Mills first argues that the response to Plaintiff's broken ankle did not violate the Eighth Amendment, which prohibits cruel and unusual punishment. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment." Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care "is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." Id. at 874 (quoting Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001)); see also Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir. 2004) (quoting Estelle

---

⁷ (...continued)
complaint. In his complaint, Briggs also relates a conversation he had with a representative of the USMS in which he was allegedly told that it was the responsibility of the Defendant to arrange for medical treatment for his ankle. (Compl. (D.E. 1 at 4).) However, Plaintiff has not presented an affidavit from the representative of the USMS who made the statement, which is inadmissible hearsay as to Mills.

v. McGuire, 429 U.S. 97, 104 (1976)) ("The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs. . . . Prison officials' deliberate indifference violates these rights '[w]hen the indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care . . . ' for a serious medical need."). "Although the right to adequate medical care does not encompass the right to be diagnosed correctly, [the Sixth Circuit] has 'long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner.'" Johnson, 398 F.3d at 874 (quoting Danese v. Asman, 875 F.2d 1239, 1244 (6th Cir. 1989)).

An Eighth Amendment claim has both an objective and a subjective component. Garretson v. City of Madison Heights, 407 F.3d 789, 796 (6th Cir. 2005); Brooks v. Celeste, 39 F.3d 125, 127-28 (6th Cir. 1994); Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the prisoner have a serious medical need. Blackmore, 390 F.3d at 896; Brooks, 39 F.3d at 128. This component can be satisfied in two ways. "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" Blackmore, 390 F.3d at 897 (emphasis in original); see also Johnson, 398 F.3d at 874.

If a prisoner's need for medical attention is not obvious, "the seriousness of a prisoner's medical needs 'may also be decided by the effect of delay in treatment.'" Blackmore, 390 F.3d at 897 (emphasis omitted).[8] Where a prisoner complains about a delay in medical treatment, the Court will "examine the seriousness of a deprivation by examining the effect of the delay in treatment." Napier v. Madison County, Ky., 238 F.3d 739, 742 (6th Cir. 2001). In those cases, "'[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical information in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" Id.; see also Johnson, 398 F.3d at 874.

The Sixth Circuit has emphasized that

> [t]he "verifying medical evidence" requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care. . . . Napier does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. Napier applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-

---

[8] The Sixth Circuit elaborated:

These decisions involve prisoner claims of delay in treatment that caused injury, loss, or handicap. . . . Other examples involve delayed administration of medication . . . , or a prisoner's refusal to take the prescribed medication . . . , or occasional missed doses of medication . . . , or claims based on a determination by medical personnel that medical treatment was unnecessary. . . . Also within this branch are decisions involving whether the prisoner was treated adequately . . . or whether any delay in providing medical care was harmless . . . , or where the prisoner had a "very minor injury for which many people outside prison would not even think of seeking outside medical treatment."

Id. at 898 (citations omitted).

10

> obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

Blackmore, 390 F.3d at 898. Where a prisoner's need for medical attention is obvious, "the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." Id. at 900.[9] In those cases, the prisoner may recover for the pain and suffering attributable to the delay. Id. at 899 ("In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition. Blackmore was suffering from appendicitis, and it is sufficient that the officers' delay in treatment of an obvious medical emergency posed a substantial risk of serious harm to Blackmore by subjecting him to unnecessary infliction of pain.").

In this case, Briggs has come forward with sufficient evidence to suggest that his injury was obvious. Plaintiff suffered from a broken fibula, a bone in his lower leg. It is obvious even to a layperson that a broken leg requires medical attention. See Mandel v. Doe, 888 F.2d 783, 785, 788 (11th Cir. 1989) (a broken leg is a serious medical condition). Plaintiff has also alleged that he

---

[9] See also Garretson, 407 F.3d at 797 ("Here, Garretson is a diabetic whose condition required insulin injections at regulated intervals—a medically required treatment which she did not receive while housed at Madison Heights. As a result of this omission, she was later admitted to the hospital. Even without specific medical records, the emergency hospital admission coupled with a stay of several days satisfies the objective requirement of a 'sufficiently serious' medical need under Farmer and Napier.").

was in continuous pain from the time of his injury on July 14, 2004 until his surgery on August 4, 2004. (Compl. (D.E. 1 at 3.) For purposes of this motion, then, the objective component of an Eighth Amendment violation has been established.

To satisfy the subjective component of an Eighth Amendment violation, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. <u>Farmer</u>, 511 U.S. at 834; <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993); <u>Woods v. Lecureux</u>, 110 F.3d 1215, 1222 (6th Cir. 1997); <u>Street v. Corrections Corp. of Am.</u>, 102 F.3d 810, 814 (6th Cir. 1996); <u>Taylor v. Michigan Dep't of Corrections</u>, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." <u>Farmer</u>, 511 U.S. at 835. Thus,

> <u>[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.</u> This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

<u>Id.</u> at 837-38 (emphasis added; citations omitted); <u>see also</u> <u>Comstock</u>, 273 F.3d at 703 ("To satisfy the subjective component, the

plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."). "If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment." Garretson, 407 F.3d at 797. Thus, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Estelle, 429 U.S. at 105-06; see also Comstock, 273 F.3d at 703 ("The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."); Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) ("Deliberate indifference . . . does not include negligence in diagnosing a medical condition.").

It is unnecessary, in this case, to consider whether the two-week delay before surgery was performed on Plaintiff's leg, during which time the only treatment afforded was an ace bandage, ice packs, and ibuprofen, constituted deliberate indifference on the part of any member of the WTDF medical staff.[10] The only defendant remaining in this case is Warden Mills, and it is undisputed that

---

[10] "'[W]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference.'" Terrance v. Northville Reg'l Psychiatric Hosp., 286 F.3d 834, 843 (6th Cir. 2002) (quoting Mandel, 888 F.2d at 789).

Mills was not involved with Plaintiff's medical treatment or in obtaining approval from the USMS for his surgery. See supra pp. 7-8. Thus, Briggs is unable to present a disputed factual issue as to whether Mills was deliberately indifferent to Plaintiff's serious medical need.

The Defendant also moves for summary judgment on the alternative ground that he had no personal involvement in Plaintiff's medical care. In the order issued on April 19, 2007, the Court dismissed the complaint as to Mills insofar as it sought recovery on the basis of respondeat superior, but allowed service to issue on a claim that Mills, personally, was deliberately indifferent to Plaintiff's need for medical treatment for his broken ankle. (D.E. 5 at 6-8.) As Briggs cannot satisfy his burden of establishing that there is a factual dispute as to Mills' personal involvement in his medical care or in obtaining approval from the USMS for the surgery, the Defendant cannot be liable to Plaintiff even if it were assumed that some other individual violated Plaintiff's rights.

For the foregoing reasons, the Court GRANTS Mills' motion for summary judgment. As all other claims have been dismissed, the complaint is DISMISSED. The Clerk is directed to enter judgment for Defendants. The motion to compel discovery is DENIED as moot.

Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith. The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445

(1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. The same considerations that lead the Court to dismiss this case also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal in forma pauperis.

The final matter to be addressed is the assessment of a filing fee if Plaintiff appeals the dismissal of this case.[11] In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, Plaintiff is instructed that, if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and 28 U.S.C. § 1915(b).

IT IS SO ORDERED this 21st day of February, 2008.

        s/ J. DANIEL BREEN
        UNITED STATES DISTRICT JUDGE

---

[11] Effective April 9, 2006, the appellate filing fee increased from $255 to $455.